UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-3251-Bandstra

UNITED STATES OF AMERICA

vs.

PEDRO JOSE BENAVIDES-NATERA,

Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 1999? ___ Yes  _X_ No
   If yes, was it pending in the Central Region?
   ___ Yes ___ No

2. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 2003? ___ Yes  _X_ No

3. Did this matter originate from a matter pending in the Narcotics Section (Miami) of the United States Attorney's Office prior to May 18, 2003? ___ Yes  _X_ No

4. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? ___ Yes  _X_ No

5. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _X_ Yes  ___ No

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____
William H. Bryan III
Assistant United States Attorney
Florida Bar Number 0045012
11200 N.W. 20th Street
Miami, Florida 33172
TEL (305) 715-7642
FAX (305) 715-7639
Email: William.Bryan@usdoj.gov

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

V.

PEDRO JOSE BENAVIDES-NATERA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 07- 3251-Bandstra

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about May, 2006 thru June, 2006 in Miami-Dade county, in the Southern District of Florida defendant(s) did, (Track Statutory Language of Offense)

knowingly conduct a financial transaction that involves the proceeds of specified unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity

in violation of Title 18 United States Code, Section(s) 1956(a)(1)(B)(i)       .

I further state that I am a(n) FBI Special Agent and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ✓ Yes  ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

October 11, 2007                                          at   Miami, Florida
Date                                                                      City and State

Ted E. Bandstra, United States Magistrate Judge              _____
Name & Title of Judicial Officer                                   Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## **AFFIDAVIT**

I, Michael A. Hoenigman, having first been duly sworn, do hereby state and depose the following:

1. I am employed as a Special Agent with the United States Federal Bureau of Investigation (FBI), Miami, Florida, and have been so employed for over six (6) years. Prior to my assignment as a Special Agent, I was assigned as support staff for the FBI, to include five (5) years as a forensic photographer at the FBI Laboratory in Washington, D.C., and seven (7) years as an investigative photographer at the FBI Office in Portland, Oregon. I am presently assigned to the High Intensity Drug Trafficking Area (HIDTA) Task Force in Miami where I specialize in investigations involving narcotics traffickers and money launderers. During my service with the FBI, I have received, among numerous other training, training specific to narcotics investigations and money laundering crimes, and searches and seizures in general. Throughout my career with the FBI, I have also been personally involved, either as a Special Agent or in a support role, in hundreds of investigations concerning the manufacture, importation, possession, and distribution of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

2. I submit this affidavit based upon personal knowledge of the facts herein as well as that of my fellow agents. The information set forth herein is provided solely for the purpose of setting forth probable cause to believe that PEDRO JOSE BENAVIDES-NATERA (hereinafter referred to as "BENAVIDES") has violated Title 18, United States Code, Section 1956, the statute governing Laundering of Monetary Instruments. Accordingly, this affidavit does not set forth everything that I know about this case.

1

3. The information contained herein is based on my personal knowledge and information provided to me by my fellow agents, witnesses, public records, computer databases, reports and a reliable confidential witness (herein referred to as the "CI"). The CI was arrested by the FBI in 2007 for the CI's role in a complex international money laundering scheme that utilized narcotics proceeds to purchase aircraft that were ultimately intended for use in transporting narcotics. The CI has provided both historical and contemporaneous information regarding the activities of money launderers, to include BENAVIDES, and the purchase of aircraft for drug trafficking organizations (hereinafter referred to as "DTOs"). The CI has provided reliable information to members of law enforcement in the past.

4. The FBI has been conducting a money laundering investigation into the purchase of aircraft in the United States by DTOs with narcotics proceeds for the purpose of transporting narcotics, specifically cocaine, from South America to the United States through Central America, Mexico, Africa and Central Europe. BENAVIDES, utilizing his COMMERCE BANK bank account in Miami, Florida, has been identified as a Venezuela-based money launder who launders DTO monies that are utilized to purchase aircraft in the United States for the purpose of transporting narcotics ultimately destined for the United States.

5. According to the CI, the CI was personally involved with a confederation of individuals that would locate aircraft desired by Venezuela based DTOs, launder bulk currency from Mexico to the United States, broker transactions to purchase aircraft from legitimate aircraft sellers in the United States, interface with aircraft title/escrow companies,[1] provide detailed inspection

---

[1] An aircraft title/escrow company assists both the seller and the purchaser of an aircraft. The aircraft title/escrow company conducts title and lein checks on behalf of the purchaser, provides an account where funds can be deposited or wire transferred to for the purchase of

reports regarding the performance of the aircraft, handle the registration matters of the aircraft with the United States Federal Aviation Administration (hereinafter, the "FAA") and ultimately export and deliver the aircraft to the DTO in Venezuela.

6. According to the CI, the CI (and others) acted at the direction of CARLOS AYALA LARA (hereinafter referred to as "AYALA") and others in orchestrating the aircraft purchases and related fund transfers. The CI detailed the overall money laundering scheme provided by AYALA for the Venezuelan based DTOs. The DTOs amassed narcotics proceeds from prior sales of controlled substances, specifically cocaine. The DTO monies would be delivered in United States currency to currency exchange organizations ("Casa de Cambios") in Mexico City, Mexico, where AYALA had trusted contacts. For a fee, the Casa de Cambios would then wire transfer the DTO monies to bank accounts of persons or juridical entities in the United States (hereinafter referred to as "buffer accounts") managed by willing and knowing participants in the money-laundering scheme. The individuals who managed the buffer accounts would also receive a money-laundering fee for accepting the deposit of funds from the Casa de Cambios into their respective buffer accounts, whereby introducing the money into the United States banking system. The principal reason for the "buffer accounts" was to disguise the true source of the monies deposited therein (drug-trafficking proceeds) and to minimize the suspicion generated by functionaries of the aircraft title/escrow companies that administrate several key aspects of the aircraft purchase process. The CI related that in a legitimate aircraft purchase there is no need for a buffer account, because the buffer account

---

aircraft, and assists in all administrative issues related to the purchase of aircraft, such as, preparing registration documents, export documentation and other FAA required documents. Once the escrow account has received all funds for the aircraft purchase transaction, the aircraft title/escrow company releases the funds to the seller, on behalf of the purchaser, and files all corresponding documentation with the FAA.

3

serves no legitimate purpose in the aircraft purchase process (other than to disguise the source of the funds used to purchase the aircraft). Moreover, the buffer account creates an additional expense to the DTO in that the DTO had to pay the Casa de Cambio owners and the managers of the buffer accounts for this extra movement of money. After enough money had been amassed in one or more buffer accounts, AYALA would himself direct, or direct the CI to have the buffer account managers wire transfer the collected monies to a specific aircraft title/escrow company for a specific plane that the DTO wanted to purchase. After the aircraft was purchased from an unwitting seller, the aircraft would ultimately be deregistered from the FAA and exported to Venezuela. The CI was responsible for the creation of many of the fictitious contract documents utilized in the sale of the aircraft to the DTOs so that the transactions would look legitimate to law enforcement.

7. The CI identified a King Air E90 twin-propeller aircraft bearing United States registration number N1100M and serial number LW-25 (hereinafter, "aircraft N1100M") that was purchased on behalf of a Venezuelan based DTO manager known only to the CI as "TONY." In 2006, the CI was contacted by AYALA to find an airworthy King Air type aircraft, which the CI knew was a favorite platform to transport cocaine from Venezuela to Guatemala or the Dominican Republic. After aircraft N1100M was located and found to be for sale, the CI, at the direction of AYALA, produced a performance report for the airworthiness of aircraft N1100M.

8. Through personal discussions with AYALA and DTO manager TONY in Venezuela, the CI learned that AYALA had utilized his trusted contacts at Casa de Cambios "B AND B," "NUEVO LEON" and "PUEBLA" located in Mexico City, Mexico to launder TONY's bulk United States currency. The bulk currency was delivered to the different Casa de Cambios by AYALA and ultimately wire transferred to United States-based buffer accounts. From the buffer accounts the

monies were then wire transferred to INSURED AIRCRAFT TITLE SERVICES (hereinafter referred to as "INSURED AIRCRAFT"), located in Oklahoma City, Oklahoma.

9. The CI informed that to make the purchase of the aircraft look legitimate, and because DTO manager TONY did not want to register the aircraft under his real name, a nominee owner would be provided by the DTO to purport to be the owner of the aircraft in Venezuela. In the instance of aircraft N1100M, the nominee owner was corporation AVIAGRO C.A., listed address Ciudad Puerto Ordaz, Venezuela, with president PEDRO J. BENAVIDES-NATERA. The CI advised that the CI never met BENAVIDES personally.

10. FAA records revealed that aircraft N1100M was purchased on or about September 8, 2006 by PLANES AND PARTS ENTERPRISES, LLC, 10773 NW 58th Street, Doral, Florida. Aircraft N1100M was exported to Venezuela and ultimately deregistered from the FAA registry on or about October 23, 2006.

11. During an extensive financial investigation related to the purchase of aircraft N1100M, your Affiant reviewed Federal Reserve Bank wire transfer records for the year 2006 associated with INSURED AIRCRAFT, the SUNTRUST bank records for PLANES AND PARTS ENTERPRISES, LLC, for the period March 2006 through October 2006, and COMMERCE BANK bank account records relating to account number 067010509 (BENAVIDES is signatory for the account) for the period January 2005 through March 2007. A review of the aforementioned bank records revealed a flow of money from Mexican Casa de Cambios "PUEBLA," "NUEVO LEON" and "TAMIBE" through the buffer account of BENAVIDES to the SUNTRUST account held by PLANES AND PARTS ENTERPRISES, and ultimately to INSURED AIRCRAFT in the amount of the purchase price of aircraft N1100M. Additionally, the BENAVIDES' COMMERCE BANK

bank account received wire transfers from Mexican Casa de Cambios "PUEBLA," "NUEVO LEON" and "TAMIBE," and sent wire transfers to INSURED AIRCRAFT for partial payment of a twin-propeller Cessna Conquest II aircraft bearing United States FAA registration number N12DT and serial number 441-0040 (hereinafter, the "Cessna aircraft"). According to the CI, on or about August 2006, AYALA had been attempting to purchase the Cessna aircraft for Venezuelan-based DTO manager DAVID. According to the CI, this particular type of aircraft was utilized by DTO's to transport cocaine from Venezuela to Africa.

12. A review of COMMERCE BANK bank records indicates that account number 067010509, opened on or about December 2000 under the name of PEDRO JOSE BENAVIDES N., Carrera Las Antillas Urb Villa, Antilla #13, Puerto Ordaz Edo Bolivar, Venezuela, was relatively inactive from January 2005 until May 2006, with a balance rarely over $1,500. Beginning on or about May 2006, the account number 067010509 was used to conduct the following wire transfer activity:

| Date | Amount | From |
| --- | --- | --- |
| 05/22/2006 | $70,000.00 | Received wire from Casa de Cambio "Tamibe," Mexico |
| 05/24/2006 | $50,555.00 | Received wire from Casa de Cambio "Puebla," Mexico |
| 05/24/2006 | $50,000.00 | Outgoing Transfer from the account to INSURED AIRCRAFT |
| 05/25/2006 | $80,000.00 | Received wire from Casa de Cambio "Tamibe," Mexico |
| 05/25/2006 | $49,445.00 | Received wire from Casa de Cambio "Puebla," Mexico |
| 05/26/2006 | $8,761.00 | Received wire from Casa de Cambio "Puebla," Mexico |
| 05/26/2006 | $50,000.00 | Received wire from Casa de Cambio "Tamibe," Mexico |

| Date | Amount | |
|---|---|---|
| 05/26/2006 | $50,000.00 | Outgoing Transfer from the account to INSURED AIRCRAFT |
| 05/30/2006 | $50,000.00 | Received wire from unknown "Casa de Cambio" |
| 06/07/2006 | $50,000.00 | Received wire from Casa de Cambio "Tamibe," Mexico |
| 06/14/2006 | $220,000.00 | Outgoing Transfer from the account to INSURED AIRCRAFT |
| 08/07/2006 | $220,000.00 | Received wire transfer from INSURED AIRCRAFT for Aircraft N12DT |
| 08/11/2006 | $200,000.00 | Outgoing Transfer from the account to PLANES AND PARTS ENTERPRISES, Doral, Florida |
| 08/23/2006 | $100,000.00 | Outgoing Transfer from the account to PLANES AND PARTS ENTERPRISES, Doral, Florida |

13. From September 2006 through March 2007, COMMERCE BANK bank account number 067010509 was relatively inactive with an account balance of approximately $6,000.00.

14. The SUNTRUST bank account for PLANES AND PARTS ENTERPRISES, LLC, 10773 NW 58th Street, Doral, Florida revealed the following wire transfers occurring in August and September 2006:

| Date | Amount | From |
|---|---|---|
| 08/11/2006 | $200,000.00 | Received wire from PEDRO JOSE BENAVIDES N., Commerce Bank Account Number 067010509 |
| 08/16/2006 | $50,000.00 | Outgoing Transfer from the account to INSURED AIRCRAFT for N1100M |
| 08/23/2006 | $100,000.00 | Received wire from PEDRO JOSE BENAVIDES N., Commerce Bank Account Number 067010509 |
| 08/28/2006 | $165,000.00 | Received wire from Casa de Cambio Nuevo Leon, Mexico |

| | | |
|---|---|---|
| 09/05/2006 | $402,000.00 | Outgoing Transfer from the account to INSURED AIRCRAFT for N1100M |

15. Post-arrest, post-<u>Miranda</u>, BENAVIDES admitted to conducting the above-detailed money transfers on behalf of DTOs to purchase aircraft used to transport drugs.

16. Based upon the aforementioned facts, your Affiant believes there is probable cause to believe that PEDRO JOSE BENAVIDES-NATERA conducted financial transactions involving the proceeds of specified unlawful activity (drug trafficking) knowing that the transaction was designed to conceal or disguise the source of the funds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**FURTHER YOUR AFFIANT SAYETH NAUGHT**

MICHAEL A. HOENIGMAN
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this ___ day of October 2007.

TED E. BANDSTRA
UNITED STATES MAGISTRATE JUDGE

8